881 So.2d 1130 (2004)
R.S., the father, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 4D03-4407.
District Court of Appeal of Florida, Fourth District.
July 7, 2004.
Rehearing Denied August 16, 2004.
*1131 Kristine M. Johnson, Weston, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Jeffrey Bassett, Assistant Attorney General, Fort Lauderdale, for appellee.
TAYLOR, J.
The father, R.S., seeks reversal of an order adjudicating his minor children dependent soon after his parental rights were restored on appeal. Because the evidence presented was insufficient to support the trial court's finding of dependency, we reverse.
In December 2001, the trial court terminated both parents' parental rights to their four minor children pursuant to a petition filed by the Department of Children and Families (DCF). The petition alleged the mother's physical abuse of one of the children, D.S., and the father's failure to protect D.S. and his siblings from such abuse. The father appealed.
On December 18, 2002, we reversed the trial court's termination of the father's parental rights, concluding that there was no evidence that the father took part in, or was even aware of, the abuse of D.S. See R.S. v. Dep't of Children and Families, 831 So.2d 1275 (Fla. 4th DCA 2002).
Soon thereafter, DCF petitioned for an order adjudicating the minor children dependent as to the father and sought a "no contact" order. The petition, filed on January 6, 2003, alleged that the father neglected the minor children and that they were at substantial risk of imminent threat of harm or imminent neglect if returned to the father. More specifically, DCF alleged three grounds for dependency: (1) that the father lacked parenting skills;[1] (2) that he failed to communicate with DCF concerning the children and provide support for them after appealing the termination of his *1132 parental rights, and (3) that he had ongoing substance abuse issues. DCF later amended the petition to include allegations of anger management and domestic violence issues, after discovering that three domestic violence injunctions had previously been filed against the father.
Following an adjudicatory hearing that ended on July 23, 2003, the trial court entered an order adjudicating the minor children dependent on October 12, 2003, nunc pro tunc to July 23, 2003. The court determined that there was clear and convincing evidence that the children's physical, mental, and emotional health are in danger of being significantly impaired based on the father's dismal parenting skills, his lack of attachment to the children prior to termination, his anger management/domestic abuse issues, and his substance abuse problems. The father appealed, arguing that DCF failed to present sufficient evidence to support the dependency adjudication.
As the supreme court observed in In the Interest of M.F. and M.F. and R.F. v. Florida Department of Children and Families, 770 So.2d 1189, 1192 (Fla.2000):
A court's final ruling of dependency is a mixed question of law and fact and will be sustained on review if the court applied the correct law and its ruling is supported by competent substantial evidence in the record. Competent substantial evidence is tantamount to legally sufficient evidence.
While a trial court's discretion in child welfare proceedings is very broad, reversal is required where the evidence is legally insufficient to sustain the findings of the trial court. See D.H. v. Dep't of Children and Families, 769 So.2d 424 (Fla. 4th DCA 2000)(holding that evidence did not support adjudication of dependency based upon the probability of prospective abuse of child).
In this case, the trial court adjudicated the minor children dependent upon two theories advanced by DCF: (1) actual neglect by the father and (2) the probability of prospective harm or neglect by the father. Under Chapter 39 of the Florida Statutes, the trial court may find a child to be "dependent" if the court determines by a preponderance of the evidence that the child has been "abandoned, abused, or neglected by the child's parent or parents or legal custodians." § 39.01(14)(a), Fla. Stat. (2003). The court may also find a child to be dependent where the court finds the child "to be at substantial risk of imminent abuse, abandonment, or neglect by the parents...." § 39.01(14)(f), Fla. Stat. (2003).
Section 39.01(45) states that "neglect" occurs:
when a child is deprived of, or is allowed to be deprived of, necessary food, clothing, shelter, or medical treatment or a child is permitted to live in an environment when such deprivation or environment causes the child's physical, mental, or emotional health to be significantly impaired or to be in danger of being significantly impaired. The foregoing circumstances shall not be considered neglect if caused primarily by financial inability unless actual services for relief have been offered to and rejected by such person....
Section 39.01(30) states that "harm" to a child's health or welfare can occur when any person:
inflicts or allows to be inflicted upon the child physical, mental, or emotional injury....
In this case, no evidence was presented that the father had actually harmed, neglected, abused, or abandoned any of his four children, or that he had allowed them to suffer any harm or abuse. *1133 In fact, from the time DCF removed the children from their home in December 1999 until the dependency hearing in July 2003, the father was not allowed contact with the children.[2] Rather, the trial court grounded its dependency order on its finding of the probability of prospective harm or neglect. The court determined that the children would be at a significant risk of harm and neglect if they were reunited with their father, because of the father's poor parenting skills, lack of attachment to the children, and substance abuse and anger management issues. In this appeal, we consider whether the evidence was legally sufficient for an adjudication of dependency.
The record reveals, and DCF concedes, that, evidence of the father's lack of parenting skills came mostly from the father's own admissions during termination of parental rights proceedings held on August 13, 2001. At that time, he candidly acknowledged his shortcomings in caring for and interacting with his children during their infancy. Later, at the dependency hearing, he clarified that he did have some interaction with the children before they were removed, but that the mother was the primary care giver. In December 1999, around the time when the children were last in the couple's care, the twins, De.S. and Du.S., were only four months old, and the oldest child, C.S., was sixteen months old.[3] The father explained that he worked sixty hours a week from 4:00 a.m. to 6:00 p.m. and cooked dinner for the family when he got home from work. He said that, because of his heavy work schedule and inexperience with infants, he seldom fed and held the twins and left the tasks of bathing, changing diapers, and feeding them to the mother. He conceded that he had "never been around children" or taken any parent training courses. However, he testified that he joined a parent support group and attended sessions twice weekly for two months. He said that he currently works only thirty hours a week and would have more time to devote to his children. He further testified that if his children were returned to him, he would initially rely on his parents for help with housing and raising his children.
Based on the above evidence, the trial court determined that the father's "dismal parenting skills" created a grave risk to the children. The court made the following findings in its dependency order concerning the father's parenting skills and their potential impact on the children:
The Father admitted that he does not know how to check on babies nor "anything about babies." He did not bathe nor feed his children. He doesn't interact with his young children because "there was nothing to react to." All childcare matters were previously deferred to the mother of the children and will, according to the Father's testimony, continue to be deferred to the Father's parents.
...
The Father has unrealistic expectations and little knowledge regarding childhood development. These factors contribute to the creation of a significant risk in light of the Father's anger management problem. This court cannot turn over *1134 the care of these children to the Father without a substantial change in the Father's attitude, knowledge and skills.
We first note the obvious. At the time of the dependency hearing in July 2003, the minor children were no longer "babies" needing the same kind or level of care required three years earlier. Moreover, the record does not support the trial court's conclusion that the father's limited knowledge of caring for infants creates a significant risk to the children who are now past toddlerhood.
As to the father's alleged substance abuse, the trial court found that, "The father had a substance abuse problem that without intervention will affect his ability to parent." While evidence of the father's prior drug use was presented, there was no evidence indicating that the father had an ongoing substance abuse problem that affected his ability to parent. Two maternal relatives testified that they had seen the father smoking marijuana on a regular basis; the most recent observation of his marijuana use had occurred over a year prior to the dependency proceeding. Another witness, a police officer, testified that he arrested the father in October 2002 for possession of a glass pipe with cocaine residue. The possession charge was later dropped.
Section 39.01(30)(g)2, Florida Statutes(2003), which governs the adjudication of dependency relating to a parent's substance abuse, requires a finding that the children were exposed to a controlled substance or that they were adversely affected by such exposure. Here, no evidence was adduced that the father used marijuana or cocaine while the children were in his care and custody, that he exposed the children to controlled substances, or that his use or possession of controlled substances in any way adversely affected the children. See P.D. v. Dep't of Children and Families, 866 So.2d 100 (Fla. 1st DCA 2004)(holding that to show that the child was harmed by mother's use of cocaine during pregnancy, as would support finding of abuse for purposes of dependency action following presence of cocaine being found in child's blood at birth, DCF was required to show that child was adversely affected by such usage).
The final factor considered by the court in finding that the minor children were at imminent risk of abuse and neglect was the fathers's "low anger threshold." The court determined that the father had trouble controlling his anger, as shown by three petitions for domestic violence previously filed against him, and as demonstrated by the father's angry outbursts during the court proceedings. Two of the domestic violence petitions were filed by acquaintances and one was filed by the maternal grandfather. All three petitions were ultimately dismissed, and the incidents upon which they were based occurred during a period when the children were not living with, or in contact with, the father. No evidence was presented that any of these incidents occurred in the presence of the children or that the father had endangered the children by any display of anger or violence. Thus, the court's finding that the father's anger management problems put the children in imminent danger of harm was speculative and unsupported by competent substantial evidence in the record. See D.H. v. Dep't of Children and Families, 769 So.2d 424, 427 (Fla. 4th DCA 2000)(holding that the statutory definition of "harm," which includes engaging in violent behavior that demonstrates a wanton disregard for the presence of a child and could reasonably result in serious injury to the child, is limited to instances where the child sees or is aware of the violence occurring); W.T. v. Dep't of Children and Families, 787 So.2d 184 (Fla. 5th *1135 DCA 2001)(holding that in order to support a finding of dependency there has to be a showing that the parent's domestic violence has had an adverse effect on the child).
A DCF expert in risk assessment, Pat Morrow, testified that the children would be at an imminent risk of abuse and neglect if they were returned to the father. However, her opinion was based on the same speculative concerns of the trial court and was not predicated on sufficient evidence of abuse or imminent risk of abuse or neglect presented at the dependency trial. See E.M.A, 795 So.2d at 188 (holding that where there is no actual abuse or neglect, a nexus must be shown between the parent's mental disorder and a significant risk of danger to the children) (citation omitted); W.T., 787 So.2d at 185("[T]he trial court in a dependency action cannot base its decision merely on the best interest of the child without consideration of the dependency status, which requires a finding of abuse, abandonment, or neglect."); M.F., 770 So.2d at 1193 ("The purpose of a dependency proceeding is not to punish the offending parent but to protect and care for a child who has been neglected, abandoned, or abused.").
In sum, we conclude that the trial court erred in finding dependency based upon the factors discussed above. While courts can consider the totality of the circumstances when determining dependency,[4] the circumstances found by the court in this case, even viewed collectively, do not form a sufficient basis for an adjudication of dependency. There was no evidence of the father's prior abuse, abandonment, or neglect of the minor children. There was insufficient evidence in the record that the children are at substantial risk of imminent abuse, abandonment, or neglect by the father. See Fla. Stat. § 39.01(14)(f); see also E.M.A. v. Dep't of Children and Families, 795 So.2d 183, 188 (Fla. 1st DCA 2001)(holding that a dependent child is one who is at risk of imminent abuse, abandonment, or neglect). As the court stated in E.M.A.:
[I]n cases like this one, where the record discloses no prior act of neglect or abuse, the Florida Legislature apparently has concluded that the mere possibility of future abuse, neglect, or abandonment will not support a finding of dependency. Rather, where the slate is clean, Florida law requires a substantial risk of imminent abuse or imminent neglect to support a finding that a child is dependent.
Id.
In this case, the slate is considered clean, as the record reveals no prior act of neglect or abuse. Thus, the evidence must show a substantial risk of imminent abuse or neglect to support the court's finding that the children are dependent, and not just the mere possibility of future abuse or neglect.
The father contends that the trial judge's finding of dependency resulted from the judge's refusal to consider the slate clean. According to the father, the court prejudged this dependency case on evidence adduced in the termination case  evidence that was deemed insufficient by our court. He argues that the judge unfairly decided this case based on his previous findings that the father's parental rights should be terminated. In support of this contention, the father refers us to the trial judge's remarks in his written order:
The Department of Children and Families has chosen in the second amended *1136 petition not to revisit the allegations in the original termination of parental rights proceedings, possibly as a result of the chilling effect of the Court of Appeals' reversal of the termination of the Father's parental rights.
[T]he court cannot ignore its previous findings. The Court takes great exception to the appellate court's observation that there was no evidence to support this Court's decision. Perhaps inartfully presented by this Court in its prior order but nonetheless present in the record, this Court believes, were facts sufficient to support the finding. The evidence provided at this trial reaffirms the initial impression that the children would be at risk in the care of the father.
We do not decide whether the above comments of the court establish a bias or predisposition that may have affected the court's decision. Instead, we reverse the dependency ruling because we conclude that the evidence supports neither a finding of abuse, neglect, or harm, nor a finding that the children would be at a substantial risk of imminent harm or neglect in the father's care.
Accordingly, we reverse the order finding the minor children dependent as to the father, R.S.
REVERSED.
GUNTHER and POLEN, JJ., concur.
NOTES
[1] The dependency petition alleged: "The father [R.S.] neglected the minor children ... in that the father admitted on or about August 13, 2001, that `I don't know how to check on babies. I don't know anything about babies.' [R.S.] does not bathe nor feed his children. He doesn't interact with his children. This is sufficient to create an environment that causes the children's physical, mental or emotional health to be significantly impaired."
[2] On May 8, 2003, the trial court lifted the "no contact" order against the father and permitted visitation with the minor children "if therapeutically recommended." However, by the time of the adjudicatory hearing, there had been no reports by the therapists and the father had not been permitted contact with his children.
[3] The youngest child, S.S., was not born until July 31, 2000 and was removed from his parents' care shortly after his birth.
[4] See F.G. v. Dep't of Children and Families, 820 So.2d 1027, 1030 (Fla. 4th DCA 2002)(quoting In re M.F. v. Dep't of Children and Families, 770 So.2d 1189 (Fla.2000)).