944 So.2d 1049 (2006)
T.S., the father, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 4D06-181.
District Court of Appeal of Florida, Fourth District.
August 16, 2006.
Lori D. Shelby, Fort Lauderdale, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Thomas B. Arden, Assistant Attorney General, Fort Lauderdale, for appellee.
PER CURIAM.
The trial court found T.S.'s three minor children "at imminent risk of being abused, neglected and abandoned" and withheld adjudication of dependency. T.S. appeals on the ground that the evidence was insufficient to support the trial court's conclusion. We reverse.
The Department of Children and Families filed a petition for dependency regarding the three minor children of T.S. and R.S. (who is not a party to this appeal). In Count I, DCF alleged that T.S. neglected the children. In Count III, DCF alleged *1050 that "the children are presently at substantial risk of imminent threat of harm as defined in Florida Statute 39.01(30)." In both counts, DCF made the following allegations:
The father, [T.S.], neglected the minor children . . . as defined in Florida Statute 39.01(45) in that the father has an alcohol abuse problem and a history of engaging in domestic violence in the presence of the minor children. On or about May 22, 2005, the father was arrested for assault, resisting a law enforcement officer and weapons possession. The mother was the alleged victim of the assault. There were previous incidents of domestic violence in 2002 and 2003. The father has an extensive criminal history.
The trial court conducted a hearing on the dependency petition. R.S. testified that T.S. had never engaged in a physical fight with her, slapped her, or choked her during their thirteen-year relationship (they dated until 2003). She also testified that she did not fear for her safety or that of her children except for once about four years prior to the hearing. R.S. admitted that she applied for domestic violence injunctions in 2002 and 2003 to protect her and her children, but claimed she did so only because DCF suggested it as a measure to keep her children. These applications did not result in restraining orders and are not included in the record on appeal. R.S. then testified that T.S. was not at her home when the police arrived in May 2005 (although he had been at the door prior to their arrival) and that the whole charge was a lie, but that T.S. had kicked the door. She indicated that the children were asleep at the time and remained asleep throughout the incident. She maintained that she and the children were not afraid or hiding in the bathroom while T.S. was at the door.
T.S. testified that he has never been physically violent toward R.S. He also testified that he was a social drinker, who might have a beer, but not often, although he had one on the night in question. T.S. indicated that he knocked on R.S.'s door for approximately ten minutes, asking her to take him home. He did admit that he slammed down a chair that hit the door.
City of Hollywood Police Officer Rush Rudolph testified that he responded to the May 2005 dispatch to R.S.'s house and that when he arrived, T.S. was in the parking lot and was "verbally abusive, very irate, screaming, [and] yelling." Officer Mark Ruggles arrived on scene and handcuffed T.S. for officer safety reasons. Rudolph testified that R.S. was visibly upset, her voice was shaking, and she explained that she did not want to let T.S. into the house because of past incidents of violence. Officer Ruggles testified that when he arrived on scene, T.S. was using foul language and raising his arms in a combative manner toward Rudolph. Ruggles then observed a knifeholder on T.S.'s belt and handcuffed T.S. for officer safety reasons. Ruggles further indicated that he could smell alcohol on T.S. and that T.S. appeared to be under the influence of alcohol.
At the conclusion of the hearing, based on a motion, the trial court dismissed Count I for neglect against T.S., finding that domestic violence did not occur in the presence of the children and did not affect the children. Following the hearing, the trial court entered a written order entitled Dependency Proceedings Order of Adjudication. The trial court made the following relevant factual findings:
2. Testimony and evidence was presented that [R.S.] and [T.S.] have three children together. They do not live together.
3. Testimony was given that since 2002 the parties have engaged in acts of Domestic *1051 Violence. It is unclear whether the acts of Domestic Violence occurred in the "presence" of the minor children. The children were infants or toddlers at this time.
4. The mother, [R.S.] applied for Temporary Restraining Orders on two different occasions in 2002 and 2003 on behalf of herself and her children with [T.S.]. She failed to appear at least one of the hearings and the Restraining Orders were dismissed.
* * *
6. In May, 2005, [T.S.] was visiting with his three children at [R.S.'s] home. He left for a period of time and returned around 10:00pm, expecting [R.S.] to drive him back to his home. The testimony was that the children were asleep when [T.S.] knocked on the door. [R.S.] did not open the door as [T.S.] may have been intoxicated. [T.S.] got upset and got loud. He banged on the front door and kicked a chair on the porch. Although [R.S.] testified that her children, who were asleep didn't awaken, a neighbor heard the commotion and called the police who responded. The police officer arrived and testified that [T.S.] was very loud and belligerent. They arrested him. [R.S.] refused to sign a statement regarding what happened that evening when asked by the police to do so.
The trial court considered these facts and wrote:
This Court believes that there has been substantive competent evidence presented of an ongoing issue of Domestic Violence between [R.S.] and [T.S.], and that [R.S.] has done little to take action in protecting herself and her children from [T.S.'s] actions. This Court has no doubt that if this is allowed to continue without intervention, supervision and education that these acts will continue to occur. This court believes, based on the evidence presented through testimony of several witnesses, [T.S.'s] outbursts in Court and his poor decision in choosing not to see his children because he can't see them on "his terms"; that this family is a "time-bomb" and that the [minor] children are at imminent risk of abuse, neglect and/or abandonment by [R.S.] and [T.S.].
Based on this analysis, the trial court concluded:
The testimony in this case has established by a preponderance of the evidence that the . . . minor children, are at imminent risk of being abused, neglected and abandoned within the meaning of Florida Statute Chapter 39. However, the Court finds that no other action other than supervision with a Domestic Violence/Anger Management class for the parents is required; and that the Court will be withholding the Adjudication of Dependency.
"`A court's final ruling of dependency is a mixed question of law and fact and will be sustained on review if the court applied the correct law and its ruling is supported by competent substantial evidence in the record. Competent substantial evidence is tantamount to legally sufficient evidence.'" R.S. v. Dep't of Children & Families, 881 So.2d 1130, 1132 (Fla. 4th DCA 2004) (citing M.F. v. Dep't of Children & Families, 770 So.2d 1189, 1192 (Fla.2000)).
We conclude that there was not competent, substantial evidence in the record supporting the trial court's withheld adjudication of dependency. In support of the petition for dependency, DCF relied on testimony regarding the May 2005 incident and R.S.'s two applications for domestic violence injunctions. It is undisputed that neither of the applications for injunction resulted in the issuance of a restraining order, so it cannot be said that whatever allegations of domestic violence were contained *1052 in the application were substantiated.
Furthermore, the evidence regarding the May 2005 incident established only that a neighbor called 911 after hearing a commotion at R.S.'s house, that R.S. was visibly upset and T.S. was combative when the police arrived, and that R.S. and T.S. agreed that T.S. was at the door of R.S.'s house and kicked or threw a chair which hit the door. We conclude that this evidence does not amount to a legally sufficient demonstration that an act of domestic violence occurred in May 2005. See § 741.28(2), Fla. Stat. ("`Domestic violence' means any assault, aggravated assault, battery, aggravated battery, sexual assault, sexual battery, stalking, aggravated stalking, kidnapping, false imprisonment, or any criminal offense resulting in physical injury or death of one family or household member by another family or household member.").
As such, despite the trial court's finding to the contrary, the record does not contain competent, substantial evidence establishing an ongoing pattern of domestic violence to support a finding of prospective harm and dependency as to the three minor children of T.S. Therefore, the trial court erred by declaring the minor children dependent and withholding the adjudication of dependency.
In sum, we reverse the finding of dependency as to the three minor children of T.S. and the order withholding adjudication of dependency and remand this case for further proceedings consistent with this opinion.
Reversed.
GUNTHER, FARMER and GROSS, JJ., concur.