958 So.2d 554 (2007)
C.A., the Father, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 4D06-4415.
District Court of Appeal of Florida, Fourth District.
June 13, 2007.
*556 Kevin G. Thomas, Hallandale, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Jeffrey P. Bassett, Assistant Attorney General, Fort Lauderdale, for appellee.
POLEN, J.
Appellant, C.A., the father, appeals the trial court's final adjudication of dependency of E.A., the minor child. In April 2006, the Department of Children and Families (DCF) filed an affidavit and petition for placement in shelter on behalf of E.A. As probable cause for removing E.A. from the home, DCF alleged E.A. "has been abused, abandoned, or neglected or is in imminent danger of illness or injury as a result of abuse, abandonment, or neglect." This action was prompted by his mother K.R.'s drug overdose in E.A.'s presence. C.A. was in the hospital at the time of the overdose. While K.R. agreed to the adjudication of dependency, C.A. did not and his case proceeded to trial. Following the presentation of evidence, the trial court made a final adjudication of dependency and placed E.A. with C.A.'s parents. C.A. raises two issues in this appeal and we find merit in both. We find there is insufficient evidence to support the trial court's adjudication of dependency and reverse.
For his first issue on appeal, C.A. argues the trial court erred in admitting K.R.'s hearsay statements, made to a DCF worker, Jillian Bleistein, into evidence. At trial, Ms. Bleistein relayed comments made by K.R. about her drug use. Defense counsel made a hearsay objection and DCF asserted that K.R. was a party and any statements she had made fell under the admissions by a party exception. Defense counsel asserted K.R. was no longer a party, as she had already consented to the dependency order. The trial court overruled the objection, finding K.R. was a party. K.R. told Bleistein that "they" did drugs in the bathroom of their house. Bleistein assumed K.R. was referring to herself and C.A.K.R. did not give specifics or details about any drug use by C.A.
Interpretation of the rules of evidence is reviewed de novo. See Linn v. Fossum, 946 So.2d 1032, 1036 (Fla.2006). Statements offered against a party are admissible and not hearsay if they are:
(a) The party's own statement in either an individual or a representative capacity;
(b) A statement of which the party has manifested an adoption or belief in its truth;
(c) A statement by a person specifically authorized by the party to make a statement concerning the subject;
§ 90.803(18)(a)-(c), Fla. Stat. C.A. argues K.R.'s statements were not admissible under this exception as she was no longer a party to the dependency proceeding, having previously consented to a dependency order.
We find K.R. was still a party to the proceeding even though she agreed to the dependency order. "`Party' means the parent or parents of the child, the petitioner, the department, the guardian ad litem or the representative of the guardian ad *557 litem program when the program has been appointed, and the child." § 39.01(50), Fla. Stat. An admission is made by a party to the litigation and it comes into evidence regardless of whether its maker is present at trial. Hunt v. Seaboard Coast Line R. Co., 327 So.2d 193, 195-96 (Fla.1976).
However, we find the trial court erred in allowing K.R.'s statements to come in as they were not made by C.A., and they were offered against C.A., not K.R. See § 90.803(18)(a), Fla. Stat. C.A. did not manifest an adoption or belief in the statement, or authorize K.R. to make the statement in his behalf. See § 90.803(1)(b)-(c), Fla. Stat. While the statements would be admissible at trial against K.R., even though they would be against both K.R.'s and C.A.'s interests, as K.R. had already settled with DCF and the trial court adopted this settlement, no issues concerning K.R. were before the trial court. Therefore it was error for the trial court to admit K.R.'s statements as they were solely against C.A.'s interest.
Further, we find admission of these statements was not harmless error. "To find this error to be harmless, this court must find that there is no reasonable possibility that the error contributed to the verdict." K.V. v. State, 832 So.2d 264, 266 (Fla. 4th DCA 2002). In its oral findings at trial, the trial court specifically stated its acceptance of K.R.'s statements that she and C.A. had used drugs in the bathroom of their home. The trial court's oral findings and final order indicate that its decision was based in large part on K.R. and C.A.'s alleged recent drug use. Therefore, we cannot say the admission of K.R.'s statements did not contribute to the verdict.
For his second issue on appeal, C.A. argues the trial court's finding of dependency is unsupported by the factual and legal evidence introduced at trial. Again, we agree.
A court's final ruling of dependency is a mixed question of law and fact and will be sustained on review if the court applied the correct law and its ruling is supported by competent substantial evidence in the record. Competent substantial evidence is tantamount to legally sufficient evidence. While a trial court's discretion in child welfare proceedings is very broad, reversal is required where the evidence is legally insufficient to sustain the findings of the trial court.
R.S. v. Dep't of Children and Families, 881 So.2d 1130, 1132 (Fla. 4th DCA 2004). "Weighing the evidence is the province of the trial court, and this Court will not disturb the trial court's credibility findings." Y.P. v. Dept. of Children and Family Services, 939 So.2d 1118, 1119-20 (Fla. 3d DCA 2006) (internal citations omitted). "In the event the evidence is conflicting or turns on credibility of the witnesses, all credence and presumption of correctness must be given to the trial court." F.R. v. Dep't of Children & Families, 826 So.2d 449, 450 (Fla. 5th DCA 2002).
The dependency petition filed by DCF alleged C.A. neglected E.A. because of his substance abuse problem and his behavior in leaving E.A. with K.R. when he had knowledge of her substance abuse problem. At trial, Bleistein testified she met with C.A. when he was in the hospital to talk about K.R.'s overdose. C.A. had been hospitalized for cellulitus at the time of K.R.'s overdose. Bleistein stated C.A. did not seem overly concerned about E.A. when they talked about K.R.'s overdose.
C.A. admitted that he and K.R. had used drugs in the past, although C.A. told her the last time he used drugs was a couple of years ago. However, after reading a Comprehensive Behavioral Health Assessment (CBHA) that was done on C.A., Bleistein *558 testified C.A. admitted to doing drugs "recently" when he met up with some old friends. Bleistein didn't know if "recently" referred to two years ago or a more recent occasion. C.A. had not been arrested on drug-related charges since 1999 and in fact, since E.A. was born, he had only received a ticket for failure to use his turn signal. Bleistein's assertion that C.A. neglected E.A. was based on the fact C.A. took no precautions to protect E.A. and left E.A. with K.R. while he was in the hospital. Bleistein admitted E.A. showed no physical signs of neglect or abuse.
C.A. testified in his own defense. C.A. heard about K.R.'s overdose from his mother approximately two hours before talking to Bleistein. C.A. was in a lot of pain and on painkillers while in the hospital and didn't really know where he was. C.A. was worried about E.A. being with K.R., but didn't know what to do and assumed it was a one-time incident. C.A. admitted to doing drugs in the past, but testified he hadn't used drugs in approximately two years. C.A. had been unaware that K.R. was continuing to use cocaine as K.R. did not do drugs in front of him. Subsequent to DCF filing the petition for dependency, C.A. had preemptively entered a substance treatment program just in case DCF ordered him to do so.
C.A. testified he was normally at home on Saturdays and Sundays and that E.A. stayed with his grandmother on Friday nights while C.A. was at work. Since C.A. never saw K.R. doing drugs, he posited she must do them on Friday nights when he was at work and E.A. was with his grandmother. C.A. thought K.R. was a good mother and did not neglect E.A. Even though C.A. had been unaware that K.R. was doing drugs, he stated he would be more diligent about making sure she wasn't using drugs. During the course of his voluntary treatment program C.A. had learned ways to determine whether someone was using drugs or not. C.A. testified he could take care of E.A. on his own if necessary.
After considering all the testimony, the trial court ruled in favor of DCF. The trial court stated:
I find for the Department that [C.A.] has abused and/or neglected the child under 39.01 or that the child is in imminent risk thereof. My findings are: I accept the testimony of Jillian Bleistein . . . from  the BSO investigator that when Dad was questioned concerning Mom's overdose with cocaine, he admitted using cocaine, heroin and marijuana with Mom in the past. [C.A.] further reported that he had recently done drugs with friends. [K.R.] admitted to Ms. Bleistein that she and [C.A.] par-take in drug use in the bathroom of their home on weekends. [K.R.] further admitted that she had shot too much cocaine on April 13, 2006, which resulted in seizures. It was then she asked her son to call 911 for help.
The Court rejects [C.A.]'s testimony that the last time he used cocaine was two years ago and that he never suspected [K.R.] was using drugs.
The final order placed E.A. with his grandparents and granted C.A. supervised visits.
The trial court's final order of dependency was centered around K.R.'s overdose in E.A.'s presence and her admission that "they" did drugs in their bathroom, as well as its disbelief in C.A.'s testimony that: 1) he was unaware of K.R.'s drug use, and 2) the last time he used drugs was two years ago. While the trial court is in the best position to judge the credibility of the witnesses, the question of whether there is competent and substantial evidence to support the finding of dependency remains. The trial court determined DCF had proven, by a preponderance of the evidence *559 that C.A. neglected E.A. and placed him at imminent risk of harm. We find the trial court's finding of dependency is not supported by the evidence.

Finding of Neglect
Section 39.01(45), Florida Statutes, states in relevant part: "`Neglect'" "occurs when a child is deprived of, or is allowed to be deprived of, necessary food, clothing, shelter, or medical treatment or a child is permitted to live in an environment when such deprivation or environment causes the child's physical, mental, or emotional health to be significantly impaired or to be in danger of being significantly impaired . . . Neglect of a child includes acts or omissions." § 39.01(43), Fla. Stat. "`Harm' to a child's health or welfare can occur when any person: Inflicts or allows to be inflicted upon the child physical, mental, or emotional injury." § 39.01(31)(a), Fla. Stat. In relation to harm from a substance abuse problem:
Exposes a child to a controlled substance or alcohol. Exposure to a controlled substance or alcohol is established by: Continued chronic and severe use of a controlled substance or alcohol by a parent when the child is demonstrably adversely affected by such usage.
§ 39.01(31)(g)(2), Fla. Stat. "Harm to a child's health can occur when any person `[e]xposes a child to a controlled substance or alcohol.'" T.G. v. Dep't of Children and Families, 927 So.2d 104, 106 (Fla. 1st DCA 2006)(quoting § 39.01(30)(g), Fla. Stat. (2005)). "A parent's use of controlled substances is harmful to a child if it is "chronic and severe" and the child is "demonstrably adversely affected" by the use." Id. at 106-07.
The trial court's finding was based on both K.R.'s and C.A.'s alleged drug use. In this case, there was no question that the mother overdosed on some form of cocaine while home with E.A. and she admitted to doing drugs on a regular basis. Nor was there any question that at the time of this incident, C.A. was hospitalized with cellulitus. The fact that both parents were hospitalized and DCF intervened on behalf of the child indicates E.A. was adversely affected by K.R.'s drug use. However, DCF admitted that E.A. did not appear to be physically neglected in any way and admitted there was no contention his physical environment was not up to par. We find this one incident is not enough to show that E.A. was demonstrably adversely affected by any alleged drug use on the part of C.A. See J.B., III v. Dep't of Children and Families, 928 So.2d 392, 395 (Fla. 1st DCA 2006).
Moreover, the trial court's finding that C.A. had a current substance abuse problem is not supported by the record. In its factual findings at trial, the trial court found the testimony showed that C.A. and K.R. did drugs in the bathroom of their home. We disagree. Bleistein testified K.R. told her "they" did drugs in the bathroom of their house and Bleistein admitted she assumed K.R. was referring to C.A. However, when Bleistein questioned K.R. as to who "they" were, K.R. replied "her and friends." Bleistein's assumption, without more, is not enough to show C.A. was using drugs in the bathroom of their home, thereby evincing chronic and ongoing substance abuse.
The trial court also found the evidence showed that C.A. admitted to doing drugs "recently" with friends. The trial court disregarded C.A.'s testimony that the last time he used drugs was two years prior. While the trial court was in the best position to judge C.A.'s credibility, we find there was not enough evidence presented to determine that C.A. had a current substance abuse problem, let alone that C.A. caused E.A. to be exposed to a controlled *560 substance or alcohol within the meaning of the statute. Besides C.A.'s one statement the trial court decided to believe and K.R.'s ambiguous testimony referring to "they," there was no evidence presented that C.A. was doing drugs, either by way of a positive drug test or testimony from someone who witnessed C.A. doing drugs. As in In re C.S., "no evidence suggested that the [child] had actually suffered any harm or injury from his [alleged] drug use." 892 So.2d 1155, 1158 (Fla. 2d DCA 2005).
The trial court also found C.A. neglected E.A. by failing to protect him from K.R.'s substance abuse problem "because he knew or should have known of the mother's abuse and failed to intervene." "In order for the father to have failed to protect, there must have been evidence that he had the capability to prevent the abuse." R.S. v. Dep't of Children and Families, 831 So.2d 1275, 1278 (Fla. 4th DCA 2002). The trial court's finding that C.A. knew or should have known about K.R.'s drug use and failed to prevent E.A.'s exposure is not supported by competent and substantial evidence. The evidence showed C.A. and K.R. had done drugs in the past, but C.A. testified he did not know that K.R. was still doing drugs. DCF presented no evidence to the contrary, other than K.R.'s statement that "they" did drugs in the bathroom. The evidence also showed that K.R. did drugs on the weekends and that E.A. was not alone with K.R. on the weekends. Moreover, at the time of this incident, C.A. was in the hospital being treated for cellulitus and did not have the ability to prevent K.R. from doing drugs.

Finding of Imminent Risk of Harm
"To prove there is an imminent risk a child will be abused or neglected, DCF must offer competent, substantial evidence that abuse or neglect is `impending and about to occur.'" J.B., III, 928 So.2d at 395. "`Imminent' encompasses a narrower time frame and means `impending' and `about to occur.'" E.M.A. v. Dep't of Children & Families, 795 So.2d 183, 186 n. 3 (Fla. 1st DCA 2001). "[W]here the slate is clean, Florida law requires a substantial risk of imminent abuse or imminent neglect to support a finding that a child is dependent." R.S. v. Dep't of Children and Families, 881 So.2d 1130, 1135 (Fla. 4th DCA 2004). "[A] parent's addictions can support a finding of prospective abuse or neglect sufficient to support an adjudication of dependency if the evidence establishes the addiction will affect a parent's ability to provide and care for his or her child." B.C. v. Dep't of Children & Families, 846 So.2d 1273, 1275 (Fla. 4th DCA, 2003). "However, if there is no evidence the child actually suffered harm or injury-physical, mental or emotional-as a consequence of a parent's alcohol or drug use, evidence that the parent has a drug or alcohol problem, standing alone, is insufficient to support a finding of dependency." J.B.M. v. Dep't of Children and Families, 870 So.2d 946, 951 (Fla. 1st DCA 2004).
In this case, the trial court found that C.A.'s substance abuse problem, as well as his failure to protect E.A. from K.R.'s drug use, constituted imminent risk of harm. As pointed out above, the evidence does not support this finding. Further, there was absolutely no testimony that E.A. had been present during or had been harmed in any way by C.A.'s alleged drug use. While it is not necessary to show E.A. was present for the parents' alleged drug use, the totality of the circumstances must show an imminent risk of harm is created by the actions of the parent(s). See J.C. v. Dep't of Children and Family Services, 937 So.2d 184, 187 (Fla. 3d DCA 2006). We find this is not the case. As pointed out above, there was no indication that *561 E.A.'s environment was not up to par or that he showed signs of neglect. Even given the evidence of C.A.'s admitted earlier drug use, we find the admitted prior drug use is not enough to show an imminent risk of harm. See R.S., 881 So.2d at 1134.
Moreover, we find the evidence failed to show that C.A. was at future risk of harm due to C.A.'s alleged drug use. See B.C., 846 So.2d at 1275. There was no evidence that C.A. had an ongoing substance abuse problem or, even if he did, that it would negatively affect his ability to care for E.A. See B.C., 846 So.2d at 1275.
Based on the above, we find the trial court erred in admitting K.R.'s hearsay statements into evidence and in issuing an order of dependency in this case, as the order is not supported by competent and substantial evidence. We reverse.
STEVENSON, C.J., and TAYLOR, J., concur.