968 So.2d 121 (2007)
C.J., the father, Appellant,
v.
DEPARTMENT OF CHILDREN & FAMILIES, Appellee.
No. 4D07-1496.
District Court of Appeal of Florida, Fourth District.
November 21, 2007.
*122 Sean Conway, Fort Lauderdale, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Jeffrey P. Bassett, Assistant Attorney General, Fort Lauderdale, for appellee.
STONE, J.
We reverse an order adjudicating C.J. dependent and remand for a new final hearing. Appellant is the child's father.
The department alleges that C.J. is at substantial risk of imminent threat of harm, as defined in section 39.01(30), Florida Statutes, or imminent neglect, as defined in section 39.01(43), Florida Statutes, arising out of Appellant's history of domestic violence against the mother.
The department concedes that the trial court erred in making a "blanket ruling" admitting hearsay under the assumption that hearsay "is permitted in dependency matters." We recognize that a trial court has broad evidentiary discretion to rely upon hearsay in numerous dependency proceedings, such as shelter hearings. Nevertheless, section 39.507(1)(b), Florida Statutes, provides that "[a]djudicatory hearing shall be conducted by the judge . . . applying the rules of evidence in use in civil cases." See also In the Interest of S.J.T., 475 So.2d 951, 953 (Fla. 1st DCA 1985). Thus, the trial court erred in admitting, and relying upon, inadmissible hearsay testimony at the adjudicatory hearing.
Appellant requests reversal without a new hearing because the record does not show that C.J. saw or was aware of the violence in the home. We conclude, however, that the trial court did not have to determine whether C.J. saw or was aware of the violence because such a finding is not required in deciding whether a child is neglected. The child was approximately one month old at the time of the first of several incidents.
On remand, a new adjudicatory hearing is required, as there is sufficient evidence for a prima facie showing, excluding the hearsay evidence, (1) that C.J. is at imminent risk of neglect or that Appellant had neglected C.J., or (2) that the department sufficiently established an imminent threat.
At the adjudicatory hearing, the department presented evidence of three separate incidents of domestic violence between Appellant and the mother within a span of four months. Taking the facts in the light most favorable to the decision, the following transpired.
In the first incident, Appellant forcibly put the mother out of the house and shut down the power to the house. The mother applied for a restraining order, but subsequently dismissed that action.
The second incident resulted in the mother being hospitalized. According to the department's interpretation of the evidence, Appellant hit the mother on the head and cut her arm with a knife. The mother, however, subsequently testified on behalf of Appellant, with whom she continued to reside, that her head injury and a significant knife wound to her arm were caused by a common kitchen accident. The mother did acknowledge that the wound occurred in the course of an argument with Appellant. The trial court did not believe the mother's explanation that an ambulance was required to take her to the hospital because she cut herself while cooking. Appellant was arrested following that incident for violating parole. This second incident occurred in the presence of another child, L.B., C.J.'s sister, who told investigators that she saw Appellant cut the mother with the knife and heard the mother screaming.
*123 The third incident occurred a month later, when Appellant struck and physically held down K.B., C.J.'s sister. There was a statement by K.B., later withdrawn, that Appellant pulled out a gun and pointed it at the mother and K.B. during that incident. Evidence also showed that Appellant broke a window and smashed a glass coffee table, cutting the mother's hand and foot, and "smashed the windows" of the mother's car.[1] Although out of the room, the children were present during this incident, and one of the children called the police.
At the time of the hearing, Appellant was in custody on two charges, one stemming from the instant case for domestic violence with a deadly weapon, and another for a felony battery. When the department's counsel asked Appellant about the facts surrounding the charges, the trial court sustained Appellant's counsel's objection based on the Fifth Amendment.
At the conclusion of all testimony, the court found that Appellant placed C.J. at risk because she "was exposed to some kind of violence." The court ruled that C.J. was subject to imminent neglect and that Appellant had neglected C.J., pursuant to sections 39.01(43) and 39.01(14), Florida Statutes. See also §§ 39.01(2), 39.01(30), Fla. Stat. (2006).
Dependency analysis begins with section 39.01(14), Florida Statutes, which states, in relevant part, that a child may be found "dependent" if the child (1) has "been abandoned, abused, or neglected by the child's parent," or (2) is "at substantial risk of imminent abuse, abandonment, or neglect by the parent." § 39.01(14)(a),(f), Fla. Stat. (2006). "Abuse" means "any willful act or threatened act that results in any physical, mental or sexual injury or harm that causes or is likely to cause the child's physical, mental, or emotional health to be significantly impaired." § 39.01(2), Fla. Stat. (emphasis added). "Harm," in turn, includes "engage[ing] in violent behavior that demonstrates a wanton disregard for the presence of a child and could reasonably result in serious injury to the child." § 39.01(30)(i), Fla. Stat. (emphasis added).
The statutory definition of "neglect" states that:
"Neglect" occurs when a child is deprived of, or is allowed to be deprived of, necessary food, clothing, shelter, or medical treatment or a child is permitted to live in an environment when such deprivation or environment causes the child's physical, mental, or emotional health to be significantly impaired or to be in danger of being significantly impaired.

§ 39.01(43), Fla. Stat. (emphasis added).
It is not always necessary that a child be physically present in the room in which an incident occurs to demonstrate neglect or risk of neglect. In J.C. v. Department of Children and Family Services, 937 So.2d 184, 187 (Fla. 3d DCA 2006), the department alleged, and the trial court found, "neglect and/or risk of imminent neglect . . . based on the environment that the children were permitted to live in." In affirming, the court explained that the totality of the circumstances surrounding the father's numerous drug transactions at their house evidenced an imminent risk of harm to the children's health, notwithstanding that the children were not present or even aware of the *124 illegal activities. This court agreed in C.A. v. Department of Children and Families, 958 So.2d 554, 557 (Fla. 4th DCA 2007), reasoning that where "the totality of the circumstances . . . show an imminent risk of harm[,] . . . it is not necessary to show [the child] was present for the parents' alleged drug use."
On the other hand, for domestic violence to constitute abuse to the child, the child must be present. In D.H. v. Department of Children and Families, 769 So.2d 424, 427 (Fla. 4th DCA 2000), this court explained that domestic violence may amount to "harm" under the definition of "abuse," "where the child sees or is aware of the violence occurring." Id. (explaining the "for the presence of a child" wording in the statutory definition of "harm"). In D.H., id. at 425, this court reversed a dependency order based on probability of prospective abuse to D.H.'s daughter, where D.H. abused his daughter's half-sister. Generally, a trial court may find that a child is "abused" based on abuse inflicted upon the child's siblings. O.S. v. Dep't of Children & Families, 821 So.2d 1145, 1148 (Fla. 4th DCA 2002) ("The evidence . . . must support a nexus between the act of abuse and any prospective abuse to another sibling."). In D.H., however, the evidence of abuse consisted of one isolated incident of physical abuse on the sibling and acts of domestic violence between D.H. and the mother where the children were not present.
In this case, police were called to investigate three separate incidents of domestic violence. The first incident resulted in the mother seeking a restraining order; the second involved cuts and bruises and the mother being hospitalized; and the third incident involved, even without the gun, grabbing and holding C.J.'s sister, smashing car windows, and breaking a glass coffee table, all with the children in the same or adjacent rooms. These incidents included serious injury to the mother and, in one incident, C.J.'s sister called police. Recognizing that some of the evidence of these incidents is hearsay, we do not mean to indicate, here, our view of the ultimate resolution. That is an issue to be addressed by the trial court on remand.
We recognize that, although the court simply stated that C.J. was placed at risk, the court's overall finding appears to be founded, in part, on risk of imminent neglect. Although the record lacks evidence of direct abuse to C.J., the trial court could properly have found that Appellant's conduct supports a finding of neglect or imminent neglect of C.J. and that Appellant's conduct caused her, under the totality of the circumstances, to be at significant risk.
Unlike the D.H. dependency order, which was based on prospective abuse, neglect or imminent neglect do not require that the child personally observe the acts. Compare § 39.01(2), Fla. Stat. (defining "abuse" to include an act that results in harm that causes or may cause significant impairment to a child's health), and § 39.01(31)(i), Fla. Stat. (defining "harm" to "occur when any person . . . [e]ngages in violent behavior that demonstrates a wanton disregard for the presence of a child and could reasonably result in serious injury to the child"), with § 39.01(43), Fla. Stat. (defining "neglect," in relevant part, to occur "when a child is . . . permitted to live in an environment when such . . . environment causes the child's physical, mental, or emotional health to be significantly impaired or to be in danger of being significantly impaired").
Appellant's reliance on this court's decision in R.S. v. Department of Children and Families, 881 So.2d 1130 (Fla. 4th DCA 2004), is misplaced. First, one of the bases for the R.S. dependency order was "the probability of prospective harm." Id. at *125 1132. Second, this court reversed the dependency order because the father's poor parenting skills and past substance abuse did not create a risk of harm or neglect to the child. Id. at 1133-34. In this case, the trial court based its order on neglect and imminent risk of neglect and, more significantly, the trial court heard evidence of multiple incidents of ongoing and substantial domestic violence with children present in the home and within a relatively short period of time, creating a risk of imminent neglect.
We note that a history of domestic violence has been recognized as supporting a finding of a threat of prospective harm. See, e.g., J.C. v. Dep't of Children & Family Servs., 947 So.2d 1246, 1249 (Fla. 2d DCA 2007); T.R. v. Dep't of Children & Families, 864 So.2d 1278 (Fla. 5th DCA 2004) (affirming a dependency order where (1) the record showed prior incidents of domestic violence, (2) the incident at issue involved a deadly weapon, and (3) evidence indicated that the parents continued their relationship).
Further, although the trial court accepted the sister's changed testimony concerning the presence of a gun, the facts surrounding Appellant's current charge of domestic violence with a deadly weapon are unclear.
We remand for a new final hearing to allow the trial court to consider whether properly admitted evidence supports a dependency finding based on neglect or imminent neglect or a recent history of domestic violence constituting an imminent threat to C.J.
STEVENSON and HAZOURI, JJ., concur.
NOTES
[1] The mother subsequently claimed that "the table wasn't secure when [Appellant] walked passed it quickly. The tabletop flipped and dropped and broke and hit [the mother's] foot, and caused the cut." The mother also denied the presence of a gun and stated that only Appellant's car windows were broken. She explained that she broke his car window, and he mistook her mother's car for hers and broke her mother's car window.