866 So.2d 100 (2004)
P.D., mother of C.W., a child, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 1D03-3044.
District Court of Appeal of Florida, First District.
January 29, 2004.
*101 Jennifer Cogdill, Fleming Island, for Appellant.
Lacey Noel, Assistant General Counsel, Department of Children and Families, Green Cove Springs, for Appellee.
KAHN, J.
P.D., the mother of C.W., appeals a dependency order entered by the trial court based solely upon a finding that the mother and child tested positive for cocaine at the child's birth. Because we conclude that a finding of harm under section 39.01(30)(g)1., Florida Statutes (2002), requires some showing of an adverse effect resulting from the mother's use of controlled substances or alcohol, we must reverse.
C.W. and P.D. each tested positive for the presence of cocaine at C.W.'s birth. The mother claims she inadvertently took prescription drugs she obtained from a friend two weeks before C.W.'s birth. On appeal, the Department of Children and Families argues, among other things, that the mother's story lacks credibility and, therefore, provides evidence of a continuing substance abuse problem and a risk of prospective abuse and neglect justifying the dependency order. The Department never argued this point at the hearing below.
Under the statutory provisions pertinent to C.W.'s situation, an adjudication of dependency requires the Department to show that C.W. has been "abandoned, abused, or neglected" by P.D. or that C.W. was at "substantial risk of imminent abuse, abandonment, or neglect." § 39.01(14)(a), (f), Fla. Stat. (2002). The Amended Petition for Dependency in this cause alleged "acts constituting abandonment, abuse and/or neglect as defined in Section 39.01(01), (02) and/or (46)." In support, the Department alleged that: 1) P.D. exposed C.W. to cocaine during her pregnancy; 2) P.D. suffered from physical ailments which precluded her from caring for C.W. for significant periods of time; 3) P.D. continues to abuse drugs; and 4) of P.D.'s two other children, one has been placed with the father and the other has been placed with the mother.
An abandoned child is one whose parent or caregiver, "while being able, makes no provision for the child's support and makes no effort to communicate with the child." § 39.01(1), Fla. Stat. (2002). An abused child is one who is subjected to "any willful act or threatened act that results in any physical, mental, or sexual injury or harm that causes or is likely to cause the child's physical, mental, or emotional health to be significantly impaired." § 39.01(2), Fla. Stat. (2002). Finally, a neglected child is one who is "deprived of... necessary food, clothing, shelter, or medical treatment or ... permitted to live in an environment when such deprivation or environment causes the child's physical, mental, or emotional health to be significantly impaired or to be in danger of being *102 significantly impaired." § 39.01(45), Fla. Stat. (2002).
Our review of the transcript of the hearing and the trial court's order leads us to conclude that the trial court based its adjudication of dependency solely upon a finding of abuse. The Department's argument at the hearing focused almost exclusively on the issue of whether P.D. knowingly used cocaine while pregnant with C.W. Despite the variety of allegations, the trial court made no pertinent factual finding other than "at the child's birth the mother and child tested positive for cocaine." As a result, we must examine whether the Department made a showing of harm as required to meet the definition of abuse in section 39.01(2).
Under section 39.01(30)(g)1., exposure of an unborn child to controlled substances or alcohol by the mother may constitute harm. That provision, however, does not contemplate an adjudication of dependency any time a newborn tests positive for the presence of a controlled substance or alcohol. In pertinent part, section 39.01(30) provides:
"Harm" to a child's health or welfare can occur when any person:

* * *
(g) Exposes a child to a controlled substance or alcohol. Exposure to a controlled substance or alcohol is established by:
1. Use by the mother of a controlled substance or alcohol during pregnancy when the child, at birth, is demonstrably adversely affected by such usage.
(emphasis added). The issue, then, is whether a detectable amount of cocaine in C.W.'s blood, absent any other adverse effects, establishes an "exposure to a controlled substance" as that phrase is defined in the statute.
Under principles of statutory construction, a court may not generally ignore or delete words used by the Legislature in a statutory provision absent a finding that "the words at issue are so meaningless or clearly inconsistent with the legislative intent that they should be ignored as mere surplusage." Greenberg v. Cardiology Surgical Ass'n, 855 So.2d 234, 237 (Fla. 1st DCA 2003). The trial court's order does not grapple with the statutory phrase "demonstrably adversely affected." We understand that the mother's drug usage had an effect upon C.W. in that it caused cocaine to be present in the infant's blood. Such effect was demonstrated by a positive blood test. Unexplainably, however, the record is devoid of any attempt by the Department to establish that C.W. was adversely affected so as to be harmed under the statute.
Perhaps public policy would favor a rule that allows a finding of dependency solely on the basis of a newborn's positive test for cocaine. Such a rule, however, would allow a finding of dependency based on the presence in a newborn of any non-prescribed controlled substance or alcohol regardless of whether the child showed any adverse effects at birth. If the Legislature had intended such a result it could have omitted the second sentence of section 39.01(30)(g) and subparagraphs 1. and 2., leaving the statute to read that harm occurs when any person "[e]xposes a child to a controlled substance or alcohol." Instead, the Legislature provided a particularized definition of "exposure to a controlled substance." The words chosen by the Legislature cannot be viewed as mere surplusage because they sharpen the definition of "harm."
We REVERSE the dependency order. In the interest of the child, the effect of this decision will be stayed for 30 days after issuance of our mandate. During *103 this time, the Department may investigate the child's situation and welfare.
BENTON and VAN NORTWICK, JJ., concur.