870 So.2d 946 (2004)
J.B.M., father of Y.B.M., a child, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 1D03-2486.
District Court of Appeal of Florida, First District.
April 26, 2004.
*948 Michael M. Naughton, Jacksonville, for Appellant.
Simeon Tyler, Dept. of Children and Families, Jacksonville, for Appellee.
HAWKES, J.
Appellant, who is blind, attended an all night Sudanese tribal meeting during which he allegedly consumed a significant quantity of alcohol. At the conclusion of the meeting, as Appellant was leaving, he fell down two flights of stairs, injured his head and broke his leg. This unfortunate accident occurred in the presence of his minor child. Help arrived, the Department of Children and Families (DCF) was notified, the notification led to an investigation, the investigation led to the sheltering of Appellant's child and, ultimately, an adjudication of dependency.
On appeal, Appellant alleges two errors. The first alleged error is the trial court's admission of blood alcohol test results without a proper predicate. The second alleged error is that there is no competent, substantial evidence to support a finding of dependency. We agree on both grounds and reverse.
*949 In its dependency petition, DCF alleged that, as a result of Appellant's fall after the Sudanese tribal meeting, the child was at substantial risk or imminent threat of harm, abuse or neglect, in that Appellant failed to provide a safe, stable and suitable home for the child because he has a history of alcohol abuse.
A dependency hearing was held where evidence was introduced that Appellant and his child, who are Sudanese, attended the tribal meeting at the home of other Sudanese and their children. While the adults attended the meeting, and evidently consumed alcohol, the children were in another room with supervision.
Appellant's wife, the child's mother who no longer resides with Appellant, testified that approximately one year prior to the accident, when she still lived with Appellant and the child, Appellant was admitted to the emergency room for alcohol poisoning. DCF introduced an emergency room record that appears to reference this same incident. The mother also testified that: when she lived with Appellant, he drank alcohol "a lot"; she and Appellant, both of whom are Sudanese, "beat" the child; and Sudanese routinely "beat" their children.
DCF also sought to introduce evidence of Appellant's blood alcohol test results, taken following his hospital admission for his broken leg. Appellant objected on grounds that a proper predicate had not been laid for the record's admission. The trial court overruled the objection and admitted the record.
Ultimately, the trial court found Appellant abused, neglected or abandoned the child by consuming alcohol to excess on the day of the accident, which rendered Appellant incapable of exercising appropriate parental supervision and control over the child, placing the child at imminent risk of harm, and that Appellant required emergency treatment for excessive drinking on at least two occasions while he was the child's primary care giver. For these reasons, the trial court adjudicated the child dependent.
We first address Appellant's claim of error in admitting the blood test over objection. When Appellant was hospitalized for his fall down the stairs, a medical blood alcohol test was performed. The only witness to testify regarding the test results was a nurse who neither drew Appellant's blood, nor was she shown to be the custodian of the records. Thus, her testimony was insufficient to lay the proper predicate for the test's admission. See Phillips v. State, 621 So.2d 734 (Fla. 3d DCA 1993) (holding nurse's testimony insufficient to lay proper predicate for admission of blood alcohol content where nurse testified records were kept in the normal course of business, but nurse did not draw blood and was not custodian of records).
Appellant also argues there was insufficient evidence to support an adjudication of dependency. "A court's final ruling of dependency is a mixed question of law and fact and will be sustained on review if the court applied the correct law and its ruling is supported by competent, substantial evidence in the record." In re M.F., 770 So.2d 1189, 1192 (Fla.2000). To support an adjudication of dependency, the parent's harmful behavior must be a present threat to the child. See B.C. v. Dep't of Children & Families, 846 So.2d 1273 (Fla. 4th DCA, 2003).
A "[c]hild who is found to be dependent" includes, inter alia, one who has been "abandoned, abused, or neglected" by the parents, or a child who is found "[t]o be at substantial risk of imminent abuse, abandonment, or neglect" by the parents. See § 39.01(14)(a) & (f), Fla. Stat. (2002). Therefore, before we can affirm the trial court's adjudication of dependency, we *950 must either find: competent, substantial evidence that the child was abandoned; competent, substantial evidence that the child was abused; competent, substantial evidence that the child was neglected; or the risk of abandonment, abuse or neglect is imminent. We will address each in turn.
An abandoned child is one whose parent or caregiver, "while being able, makes no provision for the child's support and makes no effort to communicate with the child." P.D. v. Dep't of Children & Families, 866 So.2d 100, 101 (Fla. 1st DCA 2004) (quoting § 39.01(1), Fla. Stat. (2002)). Here, there was no allegation of abandonment, nor was evidence of abandonment introduced or argued. Consequently, there can be no finding of dependency based on abandonment, and we cannot affirm the trial court on this ground.
The second ground on which a child may be found dependent is when the child is abused. An abused child is one who is subjected to "any willful act or threatened act that results in any physical, mental, or sexual injury or harm that causes or is likely to cause the child's physical, mental, or emotional health to be significantly impaired." Id. (quoting § 39.01(2), Fla. Stat. (2002)). "Harm" is defined by statute to include a parent's "[c]ontinued chronic and severe use of a controlled substance or alcohol" if "the child is demonstrably adversely affected by such usage." § 39.01(30)(a), (g) 2., (Fla. Stat.2002); B.C., 846 So.2d at 1275. Here, the only potential evidence of abuse comes from the mother's testimony that the child was "beat," or evidence of Appellant's alcohol consumption.
The mother testified through an interpreter that both she and Appellant "beat" the child, and that Sudanese "beat" their children, and that Appellant drank alcohol "a lot." These types of conclusory statements, by themselves, do not constitute competent, substantial evidence sufficient to support a finding of dependency, just as the recitation of a criminal statute, by itself, does not establish probable cause to support an arrest.
There was no effort to solicit testimony to explain what the mother meant by the term "beat," or to provide facts and circumstances to assist the trial court in making conclusions as to the meaning of the term. This testimony could easily have meant the mother and Appellant used corporal punishment on the child, and that corporal punishment was common in the Sudan. Significantly, there was no evidence that, as a result of "beatings" the child received bruises, welts, cuts, burns, broken bones, or in any way suffered physical, mental or emotional harm. This is the nature of evidence that would supply the factual basis, required to support a finding of dependency.
Similarly, there is no evidence sufficient to meet the statutory threshold, that Appellant has a chronic or severe alcohol problem which would "harm" the child. Just as no testimony was solicited as to what the mother meant by "beat," there was insufficient testimony to develop what was meant by "a lot," whether it was "chronic," and whether it harmed the child. Again, there was a lack of any factual basis to support a finding of dependency. Despite the trial court's holding that Appellant was twice admitted to the hospital for alcohol poisoning while he was the child's primary caregiver, there appears to be only one incident of hospitalization for alcohol poisoning. Significantly, at the time of that admission, the child's mother testified she was residing with Appellant, and the child was in her care. Therefore, Appellant was not the child's primary caregiver. Moreover, treatment for alcohol poisoning, standing alone, is insufficient to prove the child suffered "harm" as a result, as required by statute.
*951 Even if the test results following the tribal meeting were properly admitted, there would still be insufficient evidence that Appellant's alcohol use met the threshold of harm necessary to support an adjudication of dependency. The witnesses familiar with the tribal meeting incident testified Appellant's child was with the other children, supervised and away from the drinking. There was no evidence Appellant harmed or failed to provide for his child in any way as a result of his alcohol consumption. Accordingly, the trial court's adjudication of dependency cannot be sustained on the ground of abuse.
Another ground we may consider in a dependency action is whether there is competent, substantial evidence that the child was neglected. A neglected child is one who is "deprived of ... necessary food, clothing, shelter, or medical treatment or ... permitted to live in an environment when such deprivation or environment causes the child's physical, mental, or emotional health to be significantly impaired or to be in danger of being significantly impaired." P.D., 866 So.2d at 101-102 (quoting § 39.01(45), Fla. Stat. (2002)). Here, there was no evidence that Appellant failed to provide his child with necessary food, clothing, shelter or medical care, or that the child was physically, mentally or emotionally impaired in any manner while in Appellant's care. Accordingly, the trial court cannot be affirmed on the ground of neglect.
Finally, in the absence of actual abuse, abandonment, or neglect, a finding of dependency can be made if prospective abuse, abandonment, or neglect is shown to be imminent. See B.D. v. Dep't of Children & Families, 797 So.2d 1261, 1262 (Fla. 1st DCA 2001); In re J.L., 824 So.2d 1023, 1025 (Fla. 2d DCA 2002). "The terms `prospective' and `imminent' are not defined in the statute. `Prospective' simply means likely to happen,' or `expected.' `Imminent' encompasses a narrower time frame and means `impending' and `about to occur.'" E.M.A. v. Dep't of Children & Families, 795 So.2d 183, 186 n. 3 (Fla. 1st DCA 2001) (internal citations omitted); In re J.L., 824 So.2d at 1025.
"[A] parent's addictions can support a finding of prospective abuse or neglect sufficient to support an adjudication of dependency if the evidence establishes the addiction will affect a parent's ability to provide and care for his or her child." B.C., 846 So.2d at 1275 (citing C.C. v. Dep't of Children & Family Servs., 812 So.2d 520, 522-523 (Fla. 1st DCA 2002)). However, if there is no evidence the child actually suffered harm or injuryphysical, mental or emotionalas a consequence of a parent's alcohol or drug use, evidence that the parent has a drug or alcohol problem, standing alone, is insufficient to support a finding of dependency. See M.H. v. Dep't of Children & Families, 866 So.2d 220 (Fla. 1st DCA 2004).
Here, the record fails to support a finding of imminent prospective abuse or neglect due to the father's alcohol use. Other than one admission to the emergency room, and the improperly admitted blood alcohol test results, there was no evidence that Appellant had an alcohol problem at all, or that these two incidents were not isolated events. Significantly, there was no evidence that Appellant's behavior, if unchanged, would result in the child's impending abuse or neglect.
Because the dependency order is not supported by competent, substantial evidence, it is hereby REVERSED.
DAVIS and VAN NORTWICK, JJ., concur.