SHEPHERD, J.
This is an appeal from an order adjudicating L.P.’s three children dependent as to her on the ground of prospective neglect under section 39.01(14)(f) of the Florida Statutes. The substance of the testimony on which L.P. was adjudicated was cocaine use during the last trimester of her third pregnancy and thereafter. The Florida Department of Children and Family Services offered no evidence of harm caused to the youngest child in útero as a result of the illegal drug use, or that the mother failed to properly care for her three children. We conclude the evidence presented is insufficient to sustain a charge of prospective neglect.
Under the pertinent Florida law, a “[cjhild who is found to be dependent” includes not only one who actually has been “abandoned, abused, or neglected” by a parent or legal custodian, § 39.01(14)(a), Fla. Stat. (2006), but also a child who is found “[t]o be at substantial risk of imminent abuse, abandonment, or neglect.” § 39.01(14)(f), Fla. Stat. (2006). “Neglect” occurs
... when a child is deprived of, or is allowed to be deprived of, necessary food, clothing, shelter, or medical treatment or a child is permitted to live in an environment when such deprivation or environment causes the child’s physical, mental, or emotional health to be significantly impaired or to be in danger of being significantly impaired.
§ 39.01(43), Fla. Stat. (2006). A consideration of the facts of this case requires a conclusion that these children have not been neglected within the meaning of the statute. There is no contention in this case that any child has been deprived of necessary food, clothing, shelter, or medical treatment. The record reflects the mother first used cocaine during the sixth month of her pregnancy. From this, the court worried, “if a mother could choose that moment to do something so dangerous, then we can’t even predict what other moment she would choose to do something regarding the other children that is so dangerous.” While we appreciate the trial court’s distress over what we find it properly characterized as “bizarre” behavior by the mother during the course of a pregnancy, this observation is not sufficient to support the dependency adjudication in this case. As has been aptly stated by two of our sister courts, “[tjhe issue in prospective neglect or abuse cases is whether future behavior will adversely affect the child and can be clearly and certainly predicted.” P.S. v. Dep’t of Children & Family Servs., 825 So.2d 530, 531 (Fla. 2d DCA 2002)(emphasis added) (quoting Palmer v. Dep’t of Health & Rehab. Servs., 547 So.2d 981, 984 (Fla. 5th DCA 1989)).
Under the law of this state, a parent’s drug use alone is insufficient to adjudicate on any theory, let alone a theory of prospective neglect. B.C. v. Dep’t of Children & Families, 846 So.2d 1273, 1275 (Fla. 4th DCA 2003). Even when a parent’s drug use rises to the level of addiction or mental illness, the Department must demonstrate a nexus between the *982 drug use and the physical, mental, or emotional injury to the children. See e.g., J.B.M. v. Dep’t of Children & Families, 870 So.2d 946, 951 (Fla. 1st DCA 2004)(holding evidence insufficient to support dependency where, although parent had drug and alcohol problem, there was no evidence child suffered harm or physical, mental, or emotional injury as a consequence and no evidence parent failed to meet child’s needs while child was in his care); B.C., 846 So.2d at 1275 (accord); see also M.H. v. Dep’t of Children & Families, 866 So.2d 220, 223 (Fla. 1st DCA 2004)(“Although Appellant is addicted to drugs, there was no evidence that her children suffered harm as a result of her addiction, nor that Appellant failed to meet their needs while they were in her care.”). Moreover, poor parental judgment alone likewise will not support a dependency petition. I.T. v. Dep’t of Health & Rehab. Servs., 532 So.2d 1085, 1090 (Fla. 3d DCA 1988).
The Department registers what it articulates as a “serious public policy concern ... that of mothers using cocaine while pregnant, knowing the potential harm to the unborn child.” A reversal in this case, says the Department, “would give these mothers the green light to continue to place their drug abuse over the health and welfare of their children.” If it need be said, we signal nothing by this opinion other than the fact that the law of this state does not sanction an order adjudicating these children dependent as to L.P. on the facts of this case. As Judge Kahn eloquently stated in a recent case where the Department sought adjudication for actual abuse of a child by a mother under section 39.02(2) of the Florida Statutes, where, unlike the case before us, there existed a positive test for cocaine in the blood of a birth child, but no evidence exhibiting “adverse affect” within the meaning of section 39.01(30)(g)l,
Perhaps public policy would favor a rule that allows a finding of dependency solely on the basis of a newborn’s positive test for cocaine. Such a rule, however, would also allow a finding of dependency based on the presence in a newborn of any non-prescribed controlled substance or alcohol regardless of whether the child showed any adverse effects at birth. If the Legislature had intended such a result it could have [done so]. Instead, the Legislature provided a particularized definition of “exposure to a controlled substance.”
P.D. v. Dep’t of Children & Families, 866 So.2d 100, 102 (Fla. 1st DCA 2004). Similarly here, if the Legislature wishes as a matter of public policy to qualify a particular child rearing risk as a ground for adjudication, we are confident that it is able to do so. We appreciate the Department’s entreaty to us. However, it is our duty to say what the law is, and not what it should be.
Reversed.