MARSTILLER, J.
 

 S.S. (the “Mother”) appeals an order adjudicating her children C.M. and I.M. dependent and placing them in the custody of the Department of Children and Families (“Department”). Finding that the dependency adjudication is not supported by competent, substantial evidence, we reverse.
 

 On June 6, 2011, the circuit court entered a Dependency Shelter Order for C.M. and I.M., aged seven years old and ten years old, respectively, removing them from their mother’s custody and placing them in a foster home. Subsequently, the Department filed a Petition for Dependency alleging the children had been abused, abandoned, or neglected and/or were at substantial risk of imminent threat of harm, abuse, or neglect. The Department specifically alleged that S.S. was a victim of domestic violence by her paramour, that S.S. was abusing alcohol and drugs, and that the children were excessively absent from school. As a result of “the mother’s alcohol and/or drug abuse and domestic violence,” the petition stated, “the children have been educationally neglected, exposed to domestic violence, exposed to drug abuse and are at risk of abuse and neglect.” The court held a hearing on the petition, and thereafter entered an Order of Adjudication of Dependency stating as grounds:
 

 [T]he Department has proven by a preponderance of the evidence that the children are at substantial risk of imminent abuse and neglect. The Department has proven that the mother abuses alcohol and illegal substances to the extent that it has impaired her ability to care for the children and to maintain employment. The Department has further proven significant and ongoing domestic violence in the home. The Department has proven that the circumstances in the home have affected the children’s demeanor and school performance. The mother has also neglected the children’s dental health. Finally, the Department has proven psychological instability on the part of the mother as evidenced by self-mutilation. For the foregoing reasons, there exists a substantial and imminent risk of abuse, abandonment or neglect to the minor children [C.M.] and [I.M.],
 

 A child is deemed dependent if the court finds him or her,
 
 inter alia,
 
 “[t]o be at substantial risk of imminent abuse, abandonment, or neglect by the parent or parents or legal custodians.” § 39.01(15)(f), Fla. Stat. (2011). “Abuse,” as defined in the statute, is any willful act or threatened act resulting in “physical, mental, or sexual
 
 injury or harm
 
 that causes
 
 or is likely to cause
 
 the child’s physical, mental, or emotional health to be significantly impaired. Abuse of a child includes acts or omissions.” § 39.01(2), Fla. Stat. (2011) (emphasis added). A child suffers “abandonment” when his or her parent, “while being able, makes no provision for the child’s support and has failed to establish or maintain a substantial and positive relationship with the child.” § 39.01(1), Fla. Stat. (2011). “Neglect” means depriving a child of “necessary food, clothing, shelter, or medical
 
 *621
 
 treatment ... causing] the child’s physical, mental, or emotional health to be significantly impaired or to be in danger of being significantly impaired.” § 39.01(44), Fla. Stat. (2011).
 

 “[T]o support a finding of dependency, the parent’s harmful behavior must pose a present threat to the child based on current circumstances.”
 
 C.W. v. Dep’t of Children & Fams.,
 
 10 So.3d 136, 138 (Fla. 1st DCA 2009). “[I]n the absence of actual abuse, abandonment, or neglect, a finding of dependency can be made if prospective abuse, abandonment, or neglect is shown to be imminent.”
 
 J.B.M. v. Dep’t of Children & Fams.,
 
 870 So.2d 946, 951 (Fla. 1st DCA 2004) (citations omitted). “The terms ‘prospective’ and ‘imminent’ are not defined in the statute. ‘Prospective’ simply means likely to ‘happen,’ or ‘expected.’ ‘Imminent’ encompasses a narrower time frame and means ‘impending’ and ‘about to occur’.”
 
 E.M.A. v. Dep’t of Children & Fams.,
 
 795 So.2d 183 n. 3 (Fla. 1st DCA 2001) (internal citations omitted).
 

 “A court’s final ruling of dependency is a mixed question of law and fact and will be sustained on review if the court applied the correct law and its ruling is supported by competent substantial evidence in the record.”
 
 T.G. v. Dep’t of Children & Fams.,
 
 927 So.2d 104, 105 (Fla. 1st DCA 2006) (citation omitted). Here, the circuit court concluded C.M. and I.M. are at substantial risk of imminent abuse and neglect because of the Mother’s abuse of alcohol and illegal substances, significant and ongoing domestic violence by her paramour, her neglect of the children’s dental health, and her psychological instability. We consider each finding in turn.
 

 Abuse of Alcohol and Illegal Substances
 

 For purposes of finding dependency, harm to a child includes “extensive, abusive, and chronic use of a controlled substance or alcohol by a parent when the child is demonstrably adversely affected by such usage.” § 39.01(32)(g)2, Fla. Stat. (2011). The court found that “the mother abuses alcohol and illegal substances to the extent that it has impaired her ability to care for the children and to maintain employment.” A former supervisor of the Mother’s testified that she never saw the Mother drunk or drinking alcohol at work,
 
 [1]
 
 though the Mother often would have others buy alcohol for her, which she would store until her shift ended. On one occasion, an overnight shift manager informed the supervisor that the Mother had reported for work apparently intoxicated. When confronted, the Mother claimed she had not been drinking before her shift, but had gotten drunk the night before and was experiencing the lingering effects. A second witness, I.M.’s former teacher, testified the Mother “reeked of alcohol” when she came to pick up the children after school one day. The teacher did nothing, however, because “they were walking instead of driving, and [the Mother] was ... speaking kind of sort of okay....” While this evidence shows that the Mother drinks, it is not sufficient to show “extensive, abusive, and chronic use” of alcohol.
 

 The only evidence of the Mother’s alleged illegal substance abuse was the result of a single urine screen as testified to by a child protective investigator who neither administered the test, performed the chemical analysis, or interpreted the results; nor was she the custodian of the record. This testimony was hearsay and insufficient to lay the necessary predicate to introduce the lab report containing the drug test results.
 
 See
 
 § 90.803(6)(a), Fla. Stat. (2011);
 
 J.B.M.,
 
 870 So.2d at 949
 
 *622
 
 (finding nurse’s testimony insufficient to lay proper predicate for admission of blood alcohol test where she did not draw the blood and was not custodian of records). Consequently, there was no competent evidence of the Mother’s drug use, let alone drug abuse.
 
 See In re S.J.T.,
 
 475 So.2d 951, 953 (Fla. 1st DCA 1985) (stating that court could not make a finding based on hearsay testimony of caseworker as to test results).
 

 The Department presented insufficient evidence to prove that the Mother’s ability to care for her children and maintain employment is impaired by alcohol and drug use, as the court found. Although there was testimony that the children were often tardy to and absent from school,
 
 [2]
 
 some instances were excused.
 
 [3]
 
 The children’s teachers described them as clean, well kempt, well mannered, and earning average to above average grades. The child protective investigator testified that when she went to the Mother’s home, the children were clean and well behaved, the home was slightly cluttered, but presented no hazards, and there was adequate food. No one testified that C.M. and I.M. were poorly cared for, or that either child suffered physical, mental, or emotional harm because of the Mother’s alcohol and drug use.
 
 See B.C. v. Dep’t of Children & Fams.,
 
 846 So.2d 1273, 1275 (Fla. 4th DCA 2003) (dependency finding not supported by evidence where, although father had problem with marijuana and alcohol, there was no testimony that father failed to meet child’s needs, that child was physically harmed while in father’s care, or that that child was emotionally or mentally harmed by father’s alcohol and drug use).. There was no evidence showing that the Mother drank or took drugs in the children’s presence. And the Department presented no evidence that the Mother lost her job, or cannot stay employed, because of alcohol or drug use. In sum, there was insufficient evidence that the Mother abuses alcohol and drugs or that the children risk impending abuse and neglect from the Mother’s use of those substances.
 
 See In re L.C.,
 
 947 So.2d 1240, 1245-46 (Fla. 2d DCA 2007);
 
 J.B.M.
 
 870 So.2d at 951.
 

 Domestic Violence
 

 Domestic violence may constitute abuse if it occurs in the child’s presence, the child saw or was aware of the violence occurring, and the violence resulted in physical or mental injury to the child.
 
 See C.W.,
 
 10 So.3d at 138;
 
 M.B. v. Dep’t of Children & Fam. Servs.,
 
 937 So.2d 709, 710-11 (Fla. 2d DCA 2006);
 
 D.R. v. Dep’t of Children & Fam. Servs.,
 
 898 So.2d 254, 255 (Fla. 3d DCA 2005);
 
 D.H. v. Dep’t of Children & Fams.,
 
 769 So.2d 424, 427 (Fla. 4th DCA 2000);
 
 D.D. v. Dep’t of Children & Fams.,
 
 773 So.2d 615, 617-18 (Fla. 5th DCA 2000). The trial court in the instant case found that there is “significant and ongoing domestic violence in the home.” Indeed, the Mother’s former supervisor testified that the Mother came to work once with a black eye that, according to the Mother, her live-in boyfriend inflicted. On another occasion, the supervisor observed red marks around the Mother’s neck. The child protective investigator
 
 *623
 
 saw bruising on the Mother’s legs and feet. And the children’s father testified that several years ago the Mother told him the boyfriend “had put his hands on her in a violent manner.” While this evidence supports a finding that incidents of violence have occurred between the Mother and her paramour, it is insufficient to support the court’s finding of “significant and ongoing domestic violence in the home.”
 

 Furthermore, there was no evidence the children have witnessed or been affected by any incidents of domestic violence. The children's father testified they were living with him at the time the Mother related that the boyfriend had been violent toward her. And according to the child protective investigator, the children said they had heard the Mother and their “stepfather” yelling at each other, but they had not seen, and were not aware of, the adults hitting or throwing objects at each other. Nor had they seen their mother with a bruised face. Without evidence showing that domestic violence has occurred when the children were home, or that they otherwise were aware of the violence, the finding of impending harm to the children is unsubstantiated.
 
 See In re L.C.,
 
 947 So.2d at 1246 (concluding that finding of risk of impending abuse or neglect from domestic violence could not be sustained where there was no evidence that parents committed violent acts in front of the children).
 

 Neglect of Children’s Dental Health
 

 Neglect occurs when a parent deprives a child of,
 
 inter alia,
 
 necessary medical treatment. § 39.01(44), Fla. Stat. (2011). The term “necessary medical treatment” is defined as care necessary “to prevent the deterioration of a child’s condition or to alleviate immediate pain of a child.” § 39.01(43), Fla. Stat. (2011). The family services counselor testified that the children had not had dental care before the court placed them in the Department’s custody, and both required and received cleanings, sealants, and restorative fillings. But there had been no dental emergencies, and the children were not in pain. Assuming, without deciding, that routine dental care constitutes “necessary medical treatment” as defined in section 39.01(43), the counselor’s testimony does not show that lack of such care significantly impaired the children’s physical health. Moreover, the evidence shows that the Mother has been providing her children necessary health care. We therefore conclude the counsel- or’s testimony was not sufficient to establish imminent neglect under section 39.01(44) as a basis for finding the children dependent.
 

 Psychological Instability
 

 The Department presented evidence that the Mother engages in cutting, a method of self-harm. But there was no expert testimony describing the disorder or establishing how it could result in harm to the children. And the Mother testified that she is undergoing therapy for the problem and does not cut herself in front of the children. “Absent a sufficient nexus between a psychiatric disorder and the likelihood that a parent will substantially impair the [children’s] physical, mental, or emotional health, ... an adjudication of dependency cannot stand.”
 
 B.D. v. Dep’t of Children & Fams.,
 
 797 So.2d 1261, 1264 (Fla. 1st DCA 2001);
 
 see also I.T. v. State, Dep’t of Health & Rehab. Servs.,
 
 532 So.2d 1085, 1088 (Fla. 3d DCA 1988) (requiring “an explicit connection” between a parent’s psychiatric history and “a potential
 
 significant impairment
 
 of a child’s physical, mental, or emotional health”).
 

 CONCLUSION
 

 The trial court adjudicated C.M. and I.M. dependent finding them at risk of
 
 *624
 
 imminent abuse and neglect because of the Mother’s abuse of alcohol and illegal substances, significant and ongoing domestic violence by her paramour, her neglect of the children’s dental health, and her psychological instability. Because none of these findings is supported by competent, substantial evidence, we REVERSE the Order of Adjudication of Dependency.
 

 THOMAS, and SWANSON, JJ., concur.
 

 [1]
 

 . The Mother previously worked part-time at a fast food restaurant.
 

 [2]
 

 . The Mother asserts that the trial court relied on the school absences as an independent basis for adjudicating the children dependent. We do not see such a ruling in the Order Adjudicating Dependency. Rather, it is apparent the court considered the tardiness and absences evidence of the Mother's inability to care for the children.
 

 [3]
 

 . I.M. suffers from migraine headaches and is often absent from school or visiting the doctor as a result. The Mother testified that she sometimes has to take C.M. along on the doctor visits because she does not have her own transportation and has to rely on friends for rides.