DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**E.R.**, the mother,
Appellant,

v.

**DEPARTMENT OF CHILDREN AND FAMILIES,**
Appellee.

No. 4D14-885

[August 6, 2014]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Elizabeth Scherer, Judge; L.T. Case No. 13-003717 CJDP.

Lori D. Shelby, Fort Lauderdale, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Carolyn Schwarz, Assistant Attorney General, Fort Lauderdale, for appellee.

PER CURIAM.

E.R., the mother, appeals an order adjudicating her two minor children dependent. Because the trial court's ruling "that the mother placed both the minor children at imminent risk of neglect and harm" is not supported by competent, substantial evidence, we reverse.

The Department of Children and Families ("DCF") initiated an abuse investigation after the paternal grandparents of the minor children, E.B. and A.R., reported the father and E.B. missing. After the investigation, DCF filed a petition for dependency in June of 2013 alleging that the mother neglected the minor children and placed them "at substantial risk of imminent threat of harm," "imminent risk of abuse," "and/or imminent risk of neglect."

Testimony at an adjudicatory hearing held in September and November of 2013 revealed that the father had obtained sole custody of E.B. in June of 2012, approximately one year prior to the dependency petition. He was granted sole custody based on a sworn petition and affidavit filed in April

of 2012 in front of another judge in family court alleging that the mother showed "an inability to properly care for [E.B.]" in that she would not or could not properly feed, interact, calm, or stimulate the child; and when "not ignoring [E.B.], [the mother] commits inappropriate physical acts such as poking her unnecessarily causing trauma." The family court judge entered an order providing the mother have "no time sharing" with E.B.

The grandmother testified further regarding the mother's treatment of E.B., which she witnessed on a Nanny Cam video approximately eighteen months prior to the dependency hearing. On the video, the mother grabbed the back of E.B.'s shirt pulling her backward, making her hit her head; the mother watched TV and played on her cell phone while the child crawled away; and lastly, the mother repeatedly pulled E.B.'s hair until the child started crying. After these events, the father obtained sole custody of E.B. and the two lived with the paternal grandparents.

In June 2013, approximately one year after obtaining sole custody of E.B., the father did not show up to work and did not bring E.B. to daycare. The grandparents' attempts to contact the father were unsuccessful, and they called police to report the two missing. The grandmother explained she was concerned because she "didn't know what he was doing," and she was afraid he was not taking Zoloft which was prescribed for a mood disorder that he suffered from.

DCF determined that the father and E.B. were with the mother and A.R. at a hotel in Sebring. The father explained they went there to "start a family of our own, without the conflict" that the mother previously experienced with the grandparents. He testified that he sees a psychiatrist regularly for his prescription medication and was taking it during the incident. Officers were sent to perform a wellness check. One of the officers testified that the motel room was "clean and orderly," with food, formula, diapers, two beds, and a crib. He felt there was "no immediate danger to the children and [the parents] had money." DCF informed the officer that the mother had outstanding warrants, and he arrested her and DCF took the children into custody.

The mother testified at the September 2013 adjudicatory hearing that she was homeless and unemployed. She claimed that she did not contact the father during the custody proceedings because she was "upset and mad." She claimed that she and the father had "everything we needed" at the hotel, including food, diapers, and wipes. She testified that she was "in the means now of getting a job," and if she had a job, she would "be able to take care of [the children]."

2

The assigned child protection investigator testified that she made a finding of "inadequate supervision" based on the father leaving E.B. in the mother's care after obtaining sole custody due to his concerns about the mother's inability to care for the child and the mother's past abuse history. She also made a finding of "threatened harm" based on the father leaving the county with E.B. and having prior history of a mood disorder, not being on his medication, and not being seen by a psychologist to follow up with his mood disorder. The child advocate testified that during home visits, she had seen the mother interact more with A.R. than E.B., and that she provided the mother with referrals for voluntary services for parenting skills, counseling, and assistance programs.

In February of 2014, the trial court adjudicated the children dependent based upon a preponderance of the evidence "that the mother placed both the minor children at imminent risk of neglect and harm." The court noted the mother's alleged prior mistreatment of E.B., her "violation" of the "no time sharing" order, her failure to "contest the Order or take steps to rehabilitate herself," and her "homeless and unemployed" status.

"[I]t is well settled that, in a dependency proceeding, the allegations contained in the dependency petition must be established by a preponderance of the evidence." *D.A. v. Dep't of Children & Family Servs.*, 84 So. 3d 1136, 1138 (Fla. 3d DCA 2012).

> A court's final ruling of dependency is a mixed question of law and fact and will be sustained on review if the court applied the correct law and its ruling is supported by competent substantial evidence in the record. Competent substantial evidence is tantamount to legally sufficient evidence. While a trial court's discretion in child welfare proceedings is very broad, reversal is required where the evidence is legally insufficient to sustain the findings of the trial court.

*C.A. v. Dep't of Children & Families*, 958 So. 2d 554, 557 (Fla. 4th DCA 2007) (citation omitted).

A court may enter an order adjudicating a child dependent if the child is at substantial risk of imminent harm or neglect "based on the conduct of one parent, both parents, or a legal custodian." §§ 39.01(15)(f); 39.507(7)(a), Fla. Stat. (2013). "Harm" to a child's health or welfare occurs when the child suffers "physical, mental, or emotional injury." § 39.01(32)(a) Fla. Stat. (2013). "Neglect" occurs when "a child is deprived of . . . necessary food, clothing, shelter, or medical treatment or . . . is

3

permitted to live in an environment when such deprivation or environment causes the child's physical, mental, or emotional health to be significantly impaired or to be in danger of being significantly impaired." § 39.01(44), Fla. Stat. (2013). "'Imminent' encompasses a narrower time frame and means 'impending' and 'about to occur.'" *J.B.M. v. Dep't of Children & Families*, 870 So. 2d 946, 951 (Fla. 1st DCA 2004) (citation omitted). In imminent harm or neglect cases, "the parent's harmful behavior must pose a present threat to the child based on current circumstances" and be "clearly and certainly predicted." *S.S. v. Dep't of Children & Families*, 81 So. 3d 618, 621 (Fla. 1st DCA 2012) (citation omitted); *E.M.A. v. Dep't of Children & Families*, 795 So. 2d 183, 187 (Fla. 1st DCA 2001) (citation omitted).

### *The Trial Court's Findings Applicable to Both E.B. and A.R.*

Applicable to both children, the trial court noted the mother's "history of instability and unemployment" and then-current "homeless and unemployed" status at the adjudicatory hearing. The mother's homelessness and unemployment, standing alone, is insufficient to support a finding of a prospective harm or neglect because the mother had not previously rejected offered services. *See* § 39.01(44), Fla. Stat. (2013) (stating that if circumstances supporting a finding of neglect are "caused primarily by financial inability," then neglect will not be found "unless actual services for relief have been offered to and rejected by such person"); *Brown v. Feaver*, 726 So. 2d 322, 324 (Fla. 3d DCA 1999) ("Homelessness, derived solely from a custodian's financial inability, does not constitute abuse, neglect, or abandonment unless the Department offers services to the homeless custodian and those services are rejected."). The mother's residential instability and unemployment do not provide sufficient bases for a finding of imminent risk of neglect or harm.

Additionally, there was no testimony or evidence presented that either child was ever "deprived of . . . necessary food, clothing, shelter, or medical treatment" as a result of the mother's homelessness and unemployment to constitute imminent risk of neglect. § 39.01(44), Fla. Stat. (2013). Rather, the officers who performed the wellness check testified that the children appeared "clean," "orderly," and "healthy," with food, formula, diapers, two beds, and a crib and nothing to cause concern for the children's welfare. The grandmother testified that since the children were sheltered, the mother has fed and bathed them during her supervised visits with the children. There is no testimony to show that the mother placed the children at risk to be "deprived of . . . necessary food, clothing, shelter, or medical treatment."

***The Trial Court's Findings as to E.B.***

First, the court placed "great weight" on the family court order which granted the father sole custody of E.B. and ordered that the mother have "no time-sharing" with E.B. The court also weighed the mother's failure to "contest the Order or take steps to rehabilitate herself" after its entry. The father obtained sole custody of E.B. nearly one year prior to the dependency proceeding based on his petition for sole custody filed in family court and sworn allegations that the mother was "incapable of properly caring for" E.B., and was "abusive and neglectful" toward her. The allegations were based on Nanny Cam footage he viewed with the grandmother approximately eighteen months prior to the dependency adjudicatory hearing. There was no testimony by either the father or the grandmother that the mother had engaged in "neglectful" or "abusive" behavior since the Nanny Cam incident that occurred nearly eighteen months before the hearing. The evidence presented is insufficient to support a finding that the mother posed an "imminent risk of harm or neglect" to E.B. because there was not "a present threat to the child based on current circumstances." *S.S.*, 81 So. 3d at 621.

The case of *B.C. v. Department of Children & Families*, 846 So. 2d 1273 (Fla. 4th DCA 2003), is instructive. There, DCF filed a dependency petition in July 2002 against two parents based on "two instances of domestic violence in the presence of the couple's child" that occurred in August and December of 2000, following the couple's separation. *Id.* at 1274. Because the instances of domestic violence occurred approximately eighteen months prior to the dependency petition, this court found the instances were "simply too remote in time to support an adjudication of dependency." *Id.* at 1275. *See also M.F. v. Dep't of Children & Families*, 975 So. 2d 622, 625-26 (Fla. 4th DCA 2008) (finding that DCF "failed to establish that the father's drug use placed the children at risk of imminent neglect" because the father's prior arrest for drug possession and failed drug test did not establish that the father recently "used drugs in the presence of the children or that his drug use adversely affected the children or had an adverse effect on his ability to parent").

Here, the allegations concerning the mother's mistreatment of E.B. are likewise "too remote in time to support an adjudication of dependency." *B.C.*, 846 So. 2d at 1275. The testimony concerned actions by the mother that occurred approximately eighteen months prior to the dependency proceeding—the same amount of time as in *B.C.* In conclusion, we find

that none of the findings[1] by the trial court present competent, substantial evidence to support its conclusion that the mother subjected E.B. to "imminent risk of neglect and harm."

### *A.R.*

Any testimony regarding the mother's prior treatment toward E.B. is insufficient evidence to consider when analyzing the bases for a finding of dependency for A.R. *See M.N. v. Dep't of Children & Families*, 826 So. 2d 445, 448-49 (Fla. 5th DCA 2002) (finding that the father's prior abuse of the mother's other child who was not his was insufficient to support a finding of prospective abuse or neglect toward the parents' minor child). Thus, the "great weight" the trial court placed on the allegations in the father's petition for sole custody of E.B. and the consequent "no time sharing" order cannot support a finding of harm or neglect as to A.R.

The only finding specifically related to A.R. made by the trial court is that at the time the mother left with A.R. to go to Sebring with the father and E.B., A.R. was believed to be the child of another man. Once in Sebring, "[t]he mother was arrested [on outstanding warrants] and taken into custody . . . [leaving A.R.] with no known parent immediately available to care for the minor child" who was only two months old at the time. The police who arrested the mother notified DCF who then took A.R. into custody. This finding does not present competent, substantial evidence that the mother subjected A.R. to "imminent risk of neglect and harm."

In sum, "reversal is required [because] the evidence is legally insufficient to sustain the findings of the trial court." *C.A.*, 958 So. 2d at 557 (citation omitted).

*Reversed and remanded.*

LEVINE, CONNER and KLINGENSMITH, JJ., concur.

*     *     *

---

[1] The trial court additionally found that the mother was "in violation" of the "no time sharing" order entered by the family court judge in June of 2012. Since the order was not a restraining or "no contact" order prohibiting the mother from being in contact with E.B., the mother could not violate the family court order simply by spending time with E.B. in the presence of the father. In any event, there was no competent, substantial evidence of imminent "neglect" or "harm" as a result of the mother spending time with E.B. in the presence of the father.

*Not final until disposition of timely filed motion for rehearing.*