IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

DEPARTMENT OF CHILDREN
AND FAMILIES,

      Appellant,

v.

S.A.E., Mother of A.A.A.-E.,

      Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D15-3624

Opinion filed February 2, 2016.

An appeal from the Circuit Court for Okaloosa County.
Mary Polson, Judge.

Dwight O. Slater, Children's Legal Services, Department of Children and Families,
Tallahassee, for Appellant.

Jennifer H. Copus of Copus & Copus, P.A., Shalimar, for Appellee.

BILBREY, J.

      The Florida Department of Children and Families appeals the final order of

which adjudicated A.A.A.-E. dependent, on the ground that the trial court

misapplied section 39.01(15)(a), Florida Statutes, to the undisputed facts of the case. We agree with DCF and reverse the final order.

This case commenced when A.A.A.-E.'s mother, S.A.E., filed her private petition for dependency[1] in the circuit court. She sought to have A.A.A.-E. declared a dependent child as defined in section 39.01(15), Florida Statutes, because the child was abandoned by his father in their native country of Honduras, approximately twelve years prior to the final hearing. The threat or risk to the child, which the mother sought to remedy via her petition, was the possible deportation of A.A.A.-E. by federal authorities due to his unauthorized entry into the United States three years prior to the filing of the mother's amended petition. The mother asserted that A.A.A.-E. needed the court adjudication to support an application for a Special Immigrant Juvenile Visa under the federal Immigration and Naturalization Act, 8 U.S.C. § 1101 (a)(27)(J)(i)-(iii).[2]

---

[1] A petition filed by a person who has knowledge of the facts but is not filing on behalf of the State is commonly referred to as a "private petition for dependency," to distinguish such a case from one initiated by the DCF. See § 39.501 Fla. Stat. (petition to be filed by attorney for DCF or any other person with knowledge of the facts).

[2] 8 U.S.C.A. § 1101(a)(27)(J) provides in pertinent part:
    (27)   The term "special immigrant" means—
                    \*    \*    \*
     (J)   an immigrant who is present in the United States—
          (i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an

The mother's testimony at the final hearing supported her allegations and the trial court's findings of fact. A.A.A.-E.'s father knew of the child's existence and knew he was the father from the time the child was born, yet the father never contributed to the child's support or developed any relationship with the child. A.A.A.-E. was left in the care of his maternal grandparents in Honduras while the mother moved to the United States. When the grandparents were no longer able to take care of A.A.A.-E., his father escorted the child through Mexico and then turned him over to a smuggler to enter the United States. Immigration authorities detained A.A.A.-E., and were then able to locate the mother in Florida and reunite the child with her.

The mother testified that she was willing and able to continue to provide for all of A.A.A.-E.'s needs. The trial court specifically found, and DCF agrees, that "the safety, well-being, and physical, mental and emotional health of the Child is

agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;

(ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and

(iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status....

not endangered by the Child remaining in the custody of the Mother." The only risk of imminent harm to A.A.A.-E. proven at the hearing was the possibility of deportation and return to Honduras by federal authorities, not any harm caused by abuse, neglect, or abandonment by his mother, his father, or any other caregiver.

This case is factually similar to In re B.Y.G.M., 176 So. 3d 290 (Fla. 3d DCA 2015), In re K.B.L.V., 176 So. 3d 297 (Fla. 3d DCA 2015), and other recent cases where children residing in Florida or their caregivers sought to support applications to the federal immigration authorities with Florida circuit court adjudications of dependency.[3] As noted in In re B.Y.G.M. and In re K.B.L.V., this Court reviews the trial court's application of the statutes to the uncontroverted facts de novo. This standard of review applies where the petitioners unsuccessfully appeal denials of their petitions, as in In re B.Y.G.M. and In re K.B.L.V., and where, as here, DCF appeals the trial court's adjudication of dependency based on undisputed facts. See § 39.510, Fla. Stat.

---

[3] Even with the adjudication of dependency, A.A.A.-E. apparently would not fall under Florida's definition of a child who "may be eligible for special immigrant juvenile status under federal law" since he resides with his mother and is therefore not eligible for long-term foster care. See § 39.5075(1)(b)2, Fla. Stat. In re S.A.R.D., ___ So. 3d ___, 2016 WL 145999 (Fla. 3d DCA Jan. 13, 2016), and In re Y.V., 160 So. 3d 576 (Fla, 1st DCA 2015) provide excellent discussions of the interplay between the state courts' dependency systems and federal immigration law, and explain why an adjudication of dependency would be sought to assist in procuring special immigrant status.

A petitioner's admitted intent to use an adjudication of dependency to support federal immigration proceedings does not preclude a petitioner seeking such an adjudication. See In re Y.V., 160 So. 3d at 578 (reversing dismissal of minor orphan's petition for adjudication since motivation for petition — to facilitate immigration status — did not negate *prima facie* case for dependency); In re T.J., 59 So. 3d 1187 (Fla. 3d DCA 2011) (reversing summary denial of minor orphan's petition seeking adjudication as dependent where petition stated *prima facie* case and should have proceeded to adjudicatory hearing). In fact, courts have repeatedly held that a petitioner's immigration-related motivation for seeking an adjudication of dependency is ***irrelevant*** to the determination of whether or not the child is dependent due to abandonment. In re B.Y.G.M., 176 So. 3d at 293 (advancing immigration process without any need for relief from abuse, abandonment or neglect was "no basis for a declaration of dependency under these circumstances"); In re K.B.L.V., 176 So. 3d at 299-300 (sole need for adjudication was to support certain immigration status; only threat to child's well-being was potential deportation; no valid basis to qualify for declaration of dependency); O.I.C.L. v. Dep't of Children and Families, 169 So. 3d 1244, 1249 (Fla. 4th DCA 2015), rev. granted, ___ So. 3d ___, 2015 WL 6854614 (Fla. Oct. 30, 2015) ("determination of a child's status as dependent should be made independent of his motivations for seeking that status."); F.L.M. v. Dep't of Children & Families, 912

5

So. 2d 1264, 1269 (Fla. 4th DCA 2005) (orphan's intent to use adjudication of dependency to apply for immigration permit "is irrelevant").

Because a petitioner's immigration-related motivation for seeking an adjudication of dependency is irrelevant to the determination of whether a child is dependent, it follows that immigration considerations alone cannot constitute sufficient grounds upon which a child may be adjudicated dependent. The use of an abandonment by one parent in a child's country of origin, which has little if any present effect on the child, to support an adjudication of dependency under section 39.01(15), is a misapplication of that statute which leads to an absurd result. See In re K.B.L.V., 176 So. 3d at 299-300. Where, as here, it was undisputed that the child is receiving appropriate care in a single-parent home, a finding of "abandonment" as the ground for an adjudication of dependency, with the concomitant obligations for DCF to provide government supervision and services, is contrary to the provisions of the pertinent statutes and the clear legislative intent of chapter 39.[4]

Granted, it is possible to find a child dependent based on one parent's actions. But to construe the definition of dependency in section 39.01(15)(a) as

_____

[4] Section 39.001, Florida Statutes, sets out at length and in detail the legislative purpose and intent of chapter 39. The "paramount concern" of the statutory scheme is child safety, particularly safety from abuse, abandonment, and neglect. § 39.001(1)(b)&(3), Fla. Stat. A pathway to legal immigration is not one of the enumerated protections to be afforded by DCF's child protection system.

6

including every child living in a single parent household with adequate support and care whose second parent is absent, would be contrary to the plain meaning of the statute which provides very specific grounds for a finding of dependency. Our precedent, consistent with In re B.Y.G.M., and In re K.B.L.V., requires that,

> "[T]o support a finding of dependency, the parent's harmful behavior must pose a present threat to the child based on current circumstances." C.W. v. Dep't of Children & Fams., 10 So.3d 136, 138 (Fla. 1st DCA 2009). "[I]n the absence of actual abuse, abandonment, or neglect, a finding of dependency can be made if prospective abuse, abandonment, or neglect is shown to be imminent." J.B.M. v. Dep't of Children & Fams., 870 So.2d 946, 951 (Fla. 1st DCA 2004) (citations omitted). "The terms 'prospective' and 'imminent' are not defined in the statute. 'Prospective' simply means likely to 'happen,' or 'expected.' 'Imminent' encompasses a narrower time frame and means 'impending' and 'about to occur'." E.M.A. v. Dep't of Children & Fams., 795 So.2d 183 n. 3 (Fla. 1st DCA 2001) (internal citations omitted).

S.S. v. Dep't of Children & Families, 81 So. 3d 618, 621 (Fla. 1st DCA 2012). The father's harmful behavior — his abandonment of A.A.A.-E. in Honduras twelve years ago — does not pose a present threat to A.A.A.-E. Furthermore, there is no allegation of prospective or imminent abandonment to support a finding that A.A.A.-E. is dependent.[5]

---

[5] Our recent case In re Y.V., is distinguishable. There the child was residing safely with his uncle, but it was alleged that both parents had abandoned the child and that no parent was capable of providing supervision and care. In re Y.V., 160 So. 3d at 578, citing § 39.01(15)(a)&(f), Fla. Stat. We analyzed other cases and held that going forward to hearing on the dependency petition was appropriate, "[d]ue to the lack of a legally compelled relationship between the children and their caretakers." In re Y.V., 160 So. 3d at 579. We noted that the children in In re

7

However well-intentioned the adjudication of dependency was in this case, and however beneficial it was to A.A.A.-E.'s immigration prospects under federal law, the risk of potential deportation by federal authorities is not a danger Florida's child protective services system is intended or designed to address. Accordingly, the trial court's adjudication of dependency of A.A.A.-E. based on his father's abandonment which occurred in Honduras twelve years ago, despite the child's current beneficial situation with his mother, is REVERSED.

THOMAS and KELSEY, JJ., CONCUR.

---

Y.V. and the other cases allegedly "were not adequately protected from the harms chapter 39 is designed to prevent and remedy" and therefore a hearing was necessary on the dependency petition. Id.